MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

bjacobs@maglaw.com
(212) 880-9536

September 6, 2024

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

**By ECF**

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Mead,
>        No. 21 Cr. 48 (MKB)

Dear Chief Judge Brodie,

We write on behalf of our client, Stephen Mead, to reply to certain points in the government's sentencing memorandum ("Gov't"; Dkt. 28). For the reasons set out in Mr. Mead's original sentencing submission ("Def. "; Dkt. 26), and contrary to the government's suggestion that a sentence of 12 months' imprisonment is necessary, the Court should impose a time served sentence of 107 days. *See* 18 U.S.C. § 3553(a).

At the outset, it is notable that the government concedes that a sentence far below the Guidelines sentence is warranted in this case. Gov't at 8. The government also does not dispute the appalling conditions Stephen suffered in Italian custody for more than three months, and agrees that this experience is a "mitigating factor[]." Gov't at 9; *see* Def. at 8-9, 24-25. The government equally acknowledges as a mitigating factor Stephen's multiple "serious health issues," and does not suggest that the BOP adequately could manage those medical conditions if Stephen were in custody. Gov't at 9.[1] Finally, the government does not dispute that any additional term of imprisonment would likely be significantly longer and harsher for Stephen than the same sentence imposed on a U.S. citizen because Stephen is a foreign national. Def. at 29-33. Together with the other factors set out in 18 U.S.C. § 3553(a) ("Section 3553(a)"), these

---

[1] Even if the BOP could manage Stephen's conditions, this Court should still account for the fact that alternatives to incarceration would be more appropriate and effective to address those conditions. *See* Def. at 21-22; *cf.* U.S.S.G. § 5H1.4; *United States v. Jimenez*, 212 F. Supp. 2d 214, 217 (S.D.N.Y. 2002).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Hon. Margo K. Brodie
September 6, 2024
Page 2 of 5

points in particular justify a time served sentence. In spite of the lack of dispute over these factors, however, the government requests a sentence of 12 months' imprisonment (less the time Stephen served in Italy). Gov't at 7-8. For the reasons below, the government's arguments in favor of such a sentence have no traction.

First, it bears noting that the government's atypical request for a specific sentence of 12 months' imprisonment, rather than for a year and a day, appears to be a request that the Court treat Stephen more harshly than other similarly situated defendants. If Stephen were to be sentenced to a year and a day, Stephen would be eligible to receive good time credit, *see* 18 U.S.C. § 3624(b)(1) (limiting good time credit to defendants serving terms "of imprisonment of *more than* 1 year" (emphasis added)), and the BOP could accordingly deduct 54 days from his sentence. The government's request for 12 months, rather than for a year and a day, flies in the face of Section 3553(a)(6)'s instruction to avoid unwarranted sentence disparities.

Second, the government twice emphasizes that Stephen "has to date made *no payments* toward the forfeiture amount," Gov't at 2, 11 (emphasis in original), but the government leaves out important context: Before Mr. Mead signed the Plea Agreement reflecting the forfeiture amount, defense counsel informed the then-assigned AUSA of Mr. Mead's lack of assets to pay forfeiture, and in response, the government revised the Plea Agreement so that it would specifically provide that any failure to pay the forfeiture amount would not be a material breach of the Plea Agreement unless Stephen "has the ability to pay . . . and does not do so." Plea Agreement ¶ 10. The Probation Office's presentence investigation—as well as the sworn financial disclosure that Stephen submitted to the government in July—confirms that Stephen does not have the ability to pay the forfeiture amount at this time, *see* PSR ¶ 93, and the government does not contend that the financial disclosure is inaccurate. Stephen should not be punished for lacking assets (but does not contest the entry of the forfeiture order).

Third, although the government's unusually specific sentencing request implies a view that Stephen should serve some concrete additional period of incarceration, the request does not reckon with the substantial uncertainty (and unwarranted disparity) that would accompany any additional sentence of incarceration. To begin with, the Court should consider that although the government acknowledges (as it committed to do in conjunction with Stephen's plea) that Stephen *should* receive credit for his time in Italian custody, neither the government nor the Court can guarantee that the BOP *will* credit the time that Stephen served in Italy. Similarly, the government says the BOP has been "instructed not to designate to MDC Brooklyn," Gov't at 8 n.4, but cannot guarantee that the BOP will not later designate Stephen to the MDC, where the dire conditions could pose a substantial threat to Stephen's life and health. *See generally United States v. Colucci*, No. 23 Cr. 417 (GRB), 2024 WL 3643857 (E.D.N.Y. Aug. 5, 2024).

Further, even if Stephen were not designated to the MDC, the government does not respond to Mr. Mead's argument that, as a foreign national, Stephen almost certainly would be designated to at least a low-security facility, rather than a minimum-security camp. Further still, he also likely would not be eligible for a halfway house or home confinement, even though those

Morvillo Abramowitz Grand Iason & Anello P. C.

Hon. Margo K. Brodie
September 6, 2024
Page 3 of 5

options could comprise much of a U.S. citizen's one-year sentence. He also may not receive First Step Act credits against his sentence, depending on the timing of removal proceedings. *See* 18 U.S.C. § 3632(d)(4)(E). Even after completing his prison sentence, he would likely be remanded to immigration detention for an unknown period before a final order of removal is entered. The unwarranted disparity between Stephen and a U.S. citizen sentenced to the same amount of time—both in terms of how long they serve and under what conditions—favor a time served sentence. *See* Def. at 29-33 (citing cases).

Fourth, the government argues that the Court should impose the sentence it requests "to deter the defendant" and to "deter others from committing similar crimes." Gov't at 7. But there is no need to deter Mr. Mead. Mr. Mead has not committed another offense in the ten years since the offense conduct here, works in a different industry, and has provided support letters from 50 members of his large group of family and friends who will support him when he returns to the U.K. (as he will do immediately after sentencing if he is sentenced to time served). There is likewise no need for further imprisonment to serve the need for general deterrence, *see* Gov't at 9, where requiring Stephen to serve an additional period will not affect the impact of this case because Stephen already has served more than 100 days in exceptionally difficult conditions and suffered serious collateral consequences for his offense. *See* Def. at 27-28. The government suggests that general deterrence in this case is more important because Stephen's conduct was "unsophisticated," Gov't at 9, but that argument contravenes the usual sentencing analysis, under which the government (pursuant to the Guidelines Section 2B1.1(b)(10)) typically seeks an enhanced sentence for conduct involving sophisticated means, not unsophisticated means (which can be viewed as less culpable).

Fifth, as to the nature and circumstances of the offense, the government asserts that additional incarceration is necessary because the conduct was "serious," undertaken for "commercial advantage," and associated with "significant harm." Gov't at 8-9. Stephen fully accepts responsibility for his conduct, but notes that the conduct compares favorably with the conduct in cases, cited in the original defense submission, in which defendants have received sentences of probation or time served.[2] *See* Def. at 19, 22, 29-30. The government's assertion that deterrence or other factors require additional incarceration also insufficiently accounts for the tremendously difficult nature of the time Stephen has already served, not to mention the burden of living in the shadow of the government's seven-year investigation.

Sixth, the government invites the Court to consider that Stephen did not agree to an interview as evidence that he did not respond "diligently and proactively" to the government's prolonged investigation and to correct what the government calls a "misleading impression." Gov't at 9-10 & n.5. The defense's original submission, however, does not say that Stephen

---

[2] To the extent the government's narrative deviates from the draft Presentence Report, we object and request that the Court limit its consideration to the facts set forth in the Presentence Report or otherwise find that the additional facts at issue would not affect Stephen's sentence. *See* Fed. R. Crim. P. 32(i)(3)(b).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Hon. Margo K. Brodie
September 6, 2024
Page 4 of 5

volunteered for an interview, so there was no misimpression to correct, as the government suggests, and the government's attempt to use Stephen's exercise of his right to remain silent to justify its sentencing request is wrong. Over seven years, Stephen's counsel participated on his behalf, often proactively, in dozens of teleconferences, extensive written correspondence, and at least four extended meetings with a changing series of prosecutors (including at one point the Acting United States Attorney).

Seventh, the government's assertion that Stephen was "aware of the ongoing criminal investigation" at the time he moved home to the U.K. in 2019, *see* Gov't at 5, 10, is both irrelevant and inaccurate. The point is irrelevant because, as the government acknowledges, Stephen "did not violate any legal obligations" by moving home, Gov't at 5, and he had important personal reasons to do so to care for his father, Def. at 14. The point is inaccurate because 15 months had passed since Stephen had last heard from the government (in July 2018), and it was not at all clear that the investigation of him was "ongoing."[3] In any event, since Stephen moved home, Stephen has lived openly, offered to surrender voluntarily in the U.K. if requested, and provided the government with documents that included his home address. Def. at 11-12.

Eighth, as to the defense argument that the government itself had proposed a plea with an agreed upon time served sentence, the government notes it "discussed several potential resolutions with counsel" but never "formally offered" a plea agreement with a recommended time served sentence. Gov't at 10. But the parties did more than "discuss" a plea in which the government would recommend time served (meaning, then, *no* time) before Stephen's arrest. Gov't at 10. In late 2023, two EDNY supervisors, who at the time were a Deputy Chief of the Criminal Division and a Deputy Chief of the unit handling this matter, informed defense counsel that they had approval to offer a plea under Rule 11(c)(1)(B) with a government recommendation of a sentence of time served. At the time of Mr. Mead's arrest, counsel was awaiting a meeting with the EDNY to discuss this offer, which undercuts the government's suggestion that additional incarceration is now "necessary" (Gov't at 9) to address this case.

Finally, the government cites two cases that it argues show a 12-month sentence here would not lead to unwarranted sentencing disparities, but neither case makes the government's point. In *Correa*, the stipulated Guidelines calculation indicates the defendant had a substantial criminal history, far different from Stephen's spotless record before and after the offense conduct. The defendant also employed sophisticated means (such as circumventing password resets and using Tor to anonymize his activity) to conceal a series of intrusions more extensive

---

[3] The government generally does not inform a defendant that an investigation is over, and defense counsel generally does not ask. *See* Preet Bharara, *The Legal Double Standard That's Rarely Discussed*, N.Y. Times (Nov. 12, 2023), https://www.nytimes.com/2023/11/12/opinion/preet-bhararaprosecutors-investigations.html. Further, the insinuation of a causal connection between Stephen's move home and the coincidental docketing of the case against Zaidi, Gov't at 10, lacks any foundation. There was no such connection. Neither Stephen nor his counsel was aware of the Zaidi docket in October 2019.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Hon. Margo K. Brodie
September 6, 2024
Page 5 of 5

than Stephen's.[4] *See United States v. Correa*, 4:15-cr-679, Dkt. 15, Dkt. 45-2 (S.D. Tex.)
(describing conduct, presenting stipulated Guidelines offense level of 21 (after acceptance of
responsibility), and indicating resulting Guidelines range of 46 – 57 months (consistent with
Criminal History Category III)). In *Meneses*, the defendant likewise employed sophisticated
means to commit more varied and disruptive intrusions than Stephen's, including by seeking to
damage or interrupt directly his former employer's operations by modifying its code. *See United
States v. Meneses*, No. 13 Cr. 321, Dkt. 1, Dkt. 77 (JFB) (E.D.N.Y.).

Even if the Court finds the defendants' conduct in these cases to be comparably culpable
(which it was not), there is no indication these defendants presented the substantial mitigating
factors (which the government does not contest) in Stephen's case, including several serious and
potentially life-threatening medical conditions, an exceptionally difficult experience in pre-
sentencing custody, and the prospect of harsher and longer detention (in both BOP and ICE
custody). Taken together, these factors weigh heavily in favor of a time served sentence, which
would be "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

For the reasons above and the others set forth in Mr. Mead's original submission, the
Court should sentence Stephen principally to time served (107 days).

Respectfully submitted,

/s/ *Brian A. Jacobs*
Brian A. Jacobs
Telemachus P. Kasulis
A. Dennis Dillon

*Counsel to Stephen Mead*

cc:        Counsel of record (by ECF)

---

[4] By contrast, the credentials used to access the Artist Toolboxes in this case were the artist-specific credentials
issued to CrowdSurge customers, *see* Indictment ¶ 7, not credentials that granted administrator-level privileges or
allowed more general access to CrowdSurge's internal systems.